UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEAN J.D.,[1]<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CENTRAL VALLEY ANNEX DETENTION FACILITY et al.,<br><br>Respondents. | No. 1:26-cv-05675-TLN-SCR<br><br>A# 075-435-491<br><br>**RELEASE ORDER** |

This matter is before the Court on Petitioner Jean J.D.'s ("Petitioner") Petition for Writ of Habeas Corpus (ECF No. 1), Motion for Temporary Restraining Order (ECF No. 2), and Motion to Appoint Counsel (ECF No. 4). Respondents filed an opposition. (ECF No. 9.) For the reasons set forth below, Petitioner's habeas petition is GRANTED and his motions are DENIED as moot.

///

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual and Procedural Background[2]

The instant matter arises from Petitioner's allegedly unlawful detention by immigration authorities. (ECF No. 1.)

Petitioner entered the United States some time in 1997 without inspection or parole and has resided in this country since that date. (ECF No. 3 at 2.) Petitioner's son, who is an American citizen, submitted a Form I-130 Petition for noncitizen relative for his father, which was approved on June 17, 2019. (ECF No. 1 at 28, 74; ECF No. 9 at 5.) Petitioner sought and was granted Temporary Protected Status from January 23, 2016, through July 22, 2017, and from January 23, 2018, through July 22, 2019. (ECF No. 1 at 29; ECF No. 9 at 5.) Petitioner sought to renew his temporary protected status on March 30, 2023, but was denied on July 23, 2024. (ECF No. 9 at 5.)

Local law enforcement in Florida arrested Petitioner on February 22, 2026, for a misdemeanor charge of driving on a suspended license. (ECF No. 9 at 23.) A Florida court found him guilty on March 4, 2026. (*Id.* at 25.) He was transferred to the custody of Immigration and Customs Enforcement ("ICE") on March 5, 2026, and thereafter to Central Valley Annex Detention Facility. (*Id.* at 5; ECF No. 1 at 2.)

Petitioner had previously been charged with misdemeanor stalking in 2005.[3] (ECF No. 9 at 19.) He was charged with fraud in 2007, but the charge was dismissed. (*Id.* at 17.) In April 2011, Petitioner waived extradition from North Carolina to another state to face felony charges.[4] (*Id.* at 20.) He was arrested in North Carolina on March 24, 2016, for unlawfully buying or selling a vehicle without a license and for failing to deliver title for a vehicle. (*Id.* at 20.) Those

---

[2] These facts are either set forth in records provided by Respondents or are not disputed by them.

[3] The final disposition of this charge is not clear, but Respondents' records do not indicate that Petitioner was convicted of that offense.

[4] Again, Respondents' records do not clarify the circumstances of this offense or its final disposition. It is not clear which state made the extradition request, which felony Petitioner was charged with, or if he was convicted of it. No record of any such conviction exists in the records provided.

charges were dismissed for insufficient evidence. (*Id.* at 20–21.) On February 16, 2018, he was arrested for driving while impaired, but the charges were dismissed in May of that year. (*Id.* at 21.) Petitioner was convicted of a misdemeanor for failure to maintain proof of insurance, operating a vehicle without registration or license, and speeding 25 miles per hour over the speed limit on May 19, 2021. (ECF No. 9 at 13.) In 2023, Petitioner was convicted of a misdemeanor for driving on a suspended license. (*Id.* at 14.)

Petitioner filed the instant Petition for Writ of Habeas Corpus on July 21, 2026, challenging the lawfulness of his detention. (ECF No. 1.) He alleges that his current detention has substantially worsened his physical health. (ECF No. 3.)

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. Analysis

Petitioner challenges his continued detention without notice or a hearing as violating the Fifth Amendment's Due Process Clause. (*See* ECF No. 1 at 16.) In opposition, Respondents contend Petitioner is an "applicant for admission" who is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)"). (*See* ECF No. 9 at 1.) However, they "do[] not offer any opposition at this time to the Court ordering a bond hearing." (*Id.*)

\\

A. <u>Immigration and Nationality Act</u>

Section 1226(a) of the INA "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). The statute affords the Government broad discretion whether to release or detain the individual. *Id.* It also provides "extensive procedural protections" including several layers of review of the initial custody determination, "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202. Conversely, § 1225(b)(2) mandates detention during removal proceedings for "applicants for admission" who are "seeking admission" and does not provide for a bond hearing. *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Until the U.S. Department of Homeland Security changed its policy in July 2025, the Government consistently applied § 1226(a), not § 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.

The Court is not persuaded by Respondents' assertion that Petitioner is an "applicant for admission" subject to mandatory detention under § 1225(b)(2). Courts throughout the Ninth Circuit, including this one, have repeatedly rejected Respondents' argument on the applicability of § 1225(b)(2). *See, e.g.*, *Hortua v. Chestnut*, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916, at *3 (E.D. Cal. Dec. 9, 2025); *Estrada-Samayoa v. Cruz*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases). "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). In comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC),

2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).

Respondents put forth no new arguments or facts justifying reconsideration in this case. Thus, for the aforementioned reasons and consistent with this Court's numerous prior rulings, the Court finds Petitioner is not an applicant for admission subject to mandatory detention under § 1225(b)(2). Petitioner's detention is instead governed by § 1226(a) and due process requires, at a minimum, a bond hearing.

B. Fifth Amendment Due Process Clause

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. These due process rights extend to immigration proceedings, including deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i. Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a clear interest in continued freedom protected by the Due

Process Clause. Even if that freedom could be revoked by statute, Petitioner's liberty is still protected by the Due Process Clause. *See Hernandez*, 872 F.3d at 993; *Zadvydas*, 533 U.S. at 693. As discussed above, Petitioner made extensive efforts through existing legal pathways to obtain legal status. (ECF No. 1 at 28–29, 74; ECF No. 9 at 5.) He has lived in this country for twenty-nine years and built a family here, including a wife and son who is a citizen of this country. (ECF No. 1 at 73–74; ECF No. 3 at 2); *Trump v. Barbara*, No. 25-365, 2026 WL 1870543 (U.S. June 30, 2026) (children of noncitizens born in the United States are American citizens). Accordingly, he has a strong liberty interest protected by the Fifth Amendment.

*ii. Procedures Required*

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, these factors support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a substantial private liberty interest that is unquestionably affected by the government's detention. The amount of time Petitioner spent at liberty underscores the gravity of its loss. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). Accordingly, this factor weighs in favor of finding Petitioner has a significant private interest that has been affected by his detention.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process. *Zadvydas*, 533 U.S. at 690. While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure any detention is

reasonably related to those purposes. *Hernandez*, 872 F.3d 976.

Respondents argue that the Court should order a bond hearing rather than order Petitioner's release from immigration custody because he "is in pre-[final order of removal] detention and has criminal history." (ECF No. 9 at 1.) But Respondents fail to develop any substantive argument regarding why Petitioner's criminal history mitigates the risk of erroneous deprivation such that the government is justified in imprisoning him pending a hearing. As discussed above, Petitioner has strong community ties in the United States, which significantly lowers his risk of flight. With respect to Petitioner's criminal history, on the record before the Court, the only offenses of which Respondents have shown Petitioner was convicted are misdemeanors stemming from his failure to maintain proof of insurance or licensure and speeding. The Court is not convinced that these offenses establish a significant risk of danger to the community sufficient to overcome Petitioner's liberty interest. *See H.F. v. Albarran*, No. 1:25-CV-01795-TLN-EFB, 2025 WL 3691081, at *5 (E.D. Cal. Dec. 19, 2025) ("The risk of an erroneous deprivation of Petitioner's liberty interest is high where . . . . Petitioner has already been released from . . . criminal detention . . . ."); *see also R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community.").

Third, the government's interest in detaining Petitioner without notice and a pre-deprivation hearing is low. The effort and cost required to provide Petitioner procedural safeguards are minimal. *See Doe*, 787 F. Supp. 3d at 1094. Notice and custody determination hearings are routine processes for Respondents. Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

Upon consideration of the *Mathews* factors, the Court finds due process requires that Petitioner receive notice and a hearing before a neutral decisionmaker prior to detention. Petitioner received neither. Petitioner's detention thus violates the Fifth Amendment Due Process Clause.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.)

1. Respondents must IMMEDIATELY RELEASE Petitioner Jean J.D. A# 075-435-491 from custody. At the time of release, Respondents must return all of Petitioner's documents and possessions. **Respondents must file a notice certifying compliance with this provision of the Court's Order within two (2) court days from the date of this Order.**

2. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the Government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

3. Petitioner's Motion for Temporary Restraining Order (ECF No. 3) and Motion to Appoint Counsel (ECF No. 4) are DENIED as moot.

**4. The Clerk of Court is directed to serve Central Valley Annex Detention Facility with a copy of this Order.**

5. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATED: July 30, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE